Livezey v. Gorgas

writ, is mentioned in other of its clauses, and is contemplated in every part of the record as an object of partition. It belongs to lot No. 1, and may be considered as appurtenant to it.

3. That the fishery was appurtenant to lot No. 1, and was named in the inquest, merely as a matter of detail and specification.

*4. That notice to the parties is proved, on two grounds; first, [*71 because the writ commands it, and the sheriff returns, that he has executed the writ according to the command thereof; and secondly, because the plaintiffs issued the writ, they were present by attorney when it was returned, and at that time never complained. But even if no notice had been given, there was another remedy; and the objection comes too late on a writ of error. (5 Com. 301.)

5. That the writ of partition directs the premises to be divided, assigned and delivered; it is recited in the inquest; and the sheriff returns, that he has obeyed the command of the writ. When, therefore, the inquest declare that they have allotted the moieties to the respective parties, it must be deemed an allotment, according to the terms of the command and authority under which they acted.

---

LIVEZEY *et al. v.* GORGAS *et al.*

*Referees.—Damages.*

In an action on the case, for the continuance of a nuisance, erected by the defendant's predecessor in the title, which is referred, the referees have no power to award, that future erections of a similar character shall be submitted to the determination of a jury of freeholders, to be summoned for that purpose.

In an assize of nuisance, the plaintiff is entitled to recover damages for the injury to the mere right, without reference to the actual damage sustained.[1]

Such action will lie against a devisee of the party by whom the nuisance was originally erected.

In ERROR from the Supreme Court. A declaration was filed in the court below, by the plaintiffs in error, against the defendants, in which they set

---

[1] Miller *v.* Miller, 9 Penn. St. 74.

Livesey v. Gorgas.

forth, "that on the ——— of ——— 1790, and thence continually, they have been seised in their desmesne as of fee, of and in a certain water grist-mill, with the appurtenances, upon Wissahickon creek, in Philadelphia county; that the defendants, all the time aforesaid, were, and still are, in possession of a certain other water grist-mill, with the appurtenances, upon the same creek, and below the mill of the plaintiffs; and that the defendants, intending to injure the plaintiffs, had raised their dam *higher, to wit, ——— feet

*72]

higher than the same had ever been before raised, and thereby unjustly penned back, pent up, and obstructed the water of the said creek, between the said mills, insomuch that the water of the creek, during all the time aforesaid, overflowed and greatly damaged, spoiled, injured and broke to pieces the said mill of the plaintiffs; to their great damage in their said hereditary estate, and whereby they were forced to expend a large sum, &c., in repairing, &c."

The defendants pleaded "not guilty, with leave to alter, and give the special matter in evidence:" and afterwards, "by agreement of attorneys in writing filed, all matters in variance between the parties, are referred to William Ward Burrows, Alexander Martin, John Holmes and George Eyre, who shall have full power to award whether any and what sum shall be paid to the plaintiff by the defendant, and *vice versâ*, to settle their respective claims to the waters of the Wissahickon creek, by fixing what shall be the height of the defendant's dam, and whether any alteration shall be made therein, and to direct articles to be executed accordingly : the report of any three to be conclusive."

All the referees concurred in filing a report, by which it was found and awarded : " 1st. That the defendants, their heirs and assigns, shall and may erect and complete the mill-dam, to their mill now belonging, of a height corresponding with the bottom of the hole now bored in a certain rock, standing and being on the north-east side of Wissahickon creek, near the said mill. And the said dam, of the height aforesaid, shall and may for ever hereafter keep and maintain. And if the said defendants, their heirs and assigns, or either or any of them, shall and do, wilfully or negligently, cause or suffer the said dam to be raised higher than is hereinafter mentioned, then, and in such case, it shall be lawful for the plaintiffs, their heirs and assigns, to give a written notice to the defendants, their heirs and assigns, requiring them to reduce the said dam to its proper level, herein before directed : and if the defendants, their heirs and assigns, shall neglect or refuse so to do, for thirty days after such notice, the plaintiffs, their heirs and assigns, may summon three freeholders, being indifferent men, to view and examine the same; and if the said freeholders shall be of opinion, that the plaintiffs, &c., are injured by the said dam being carried up higher than the level herein directed, they shall give a written notice to the defendants, &c., requiring them to reduce the said dam to its proper level; and if, within thirty days thereafter, the defendants, &c., shall not reduce the said dam to its level aforesaid, the plaintiffs, &c., may lawfully enter upon the said dam, and abate and prostrate the same. 2d. In consideration of the foregoing privileges, the referees order and award, that the defendants, &c., holding the said mill, shall, yearly and every year, pay 10*l.* to the plaintiffs, &c., the

*73]

first payment to be made on the 31st *of March 1797. And also, that the defendants do, on the 31st of March next, pay to the plaintiffs

62

Livezey v. Gorgas.

50*l.*, which shall be in full of all claims and demands on the part of the plaintiffs against the defendants, on account of the said mill-dam. Lastly, the referees award and direct, that the said parties, respectively, shall mutually execute and deliver proper deeds and instruments in writing, for the granting, assuring and confirming, as well the said privileges hereby awarded to the said defendants, their heirs and assigns, as the said annual payment to the plaintiffs, &c.: and it is awarded and directed, that the parties divide the costs."

On the 21st of March 1796, "the report of the referees was read and confirmed, and judgment *nisi*." On the 22d of March, exceptions to the report were filed; but after hearing witnesses, and the argument of counsel, on the 14th of September 1796, "the report of the referees and judgment were confirmed:" and thereupon, the present writ of error was brought.

On arguing the case in this court, *Lewis*, for the plaintiff in error, took the following exceptions to the record:

1st. That the referees had exceeded the authority given by the submission of the parties, inasmuch as they have directed the plaintiffs to sell to the defendants a certain privilege, and have awarded an annual sum, to be paid by the defendants to the plaintiffs, as the price of the privilege, which were not matters in variance between the parties, nor included in the rule of reference.

2d. That the referees have directed deeds to be executed by the plaintiffs, for assuring to the defendants a new right, not for settling the old rights of the parties (which are alone contemplated in the submission) to the waters of the Wissahickon.

3d. That the referees have established a new tribunal for deciding the future controversies of the parties; a power which is inconsistent with the general principles of law, and not supported by the agreement or submission of the parties.

4th. That the referees have awarded the parties to divide the costs.

5th. That the judgment in confirmation of the report, being entered generally, part of it cannot be affirmed and part reversed. (Carth. 235; 2 Bac. Abr. 227.)

The objections were answered by *Rawle*, for the defendants in error, to the following effect:

1st. That the submission was general, and shows the real points in controversy between the parties: and on the principles of the law of awards in Pennsylvania, the present award ought to be enforced. (1 Dall. 364, 314.)

2d. That the report, so far as it awards the payment of money, comes strictly within the act of assembly; but on the other two *objects of the report (the grant of the privilege, and the execution of deed [*74 to assure it), there could be no judgment, and they remain in the record, as rules of court, to be enforced by attachment, of which no writ of error lies. (3 Dall. Laws, 97; 2 Bac. Abr. 215; 3 Inst. 31.)

3d. That the present record is informally sent up; but it may either be reduced to form by the court, or they may satisfy their consciences, by awarding a *certiorari;* which, however, the defendants in error have no right to issue. (2 Bac. Abr. 204-*t*; 5 Com. Dig. 166.)

4th. That supposing the present record, in all its parts, to be a subject for a writ of error, it is a maxim, that no one can assign that for error, which is for his own advantage. (2 Bac. Abr. 220.) Thus, the referees find that the defendants are entitled to the privilege, on paying for it ; but by way of further security to the plaintiffs, and for their benefit, a summary examination by freeholders is provided, to restrain subsequent encroachments. This is obligatory on the defendants ; but it is optional with the plaintiffs, who may have recourse to the ordinary legal remedies.

5th. That the report of the referees does not give anything new to the defendants. The subject in dispute and submitted was, whether the defendants had a right to raise their dam ; and the referees find that they have such a right, by an old continued compact, paying an equivalent.

6th. That the referees had power to make an award touching real estate. (Kyd 34, 133, 136.)

On the last day of the session, the court mentioned, that they had not been able to form a decisive and satisfactory opinion on the authorities and arguments in this cause ; and that, therefore, they would keep it under advisement, until the adjourned session. They added, that if the plaintiff in error was to be considered as restrained from pursuing the ordinary remedies of the law, and confined to the remedy prescribed in the report, in case of any future nuisance, or encroachment upon his rights, it was their present sentiment, that the referees had exceeded their authority. The point, however, was not made in the argument before the supreme court ; and merits further consideration.

*Cur. adv. vult.*

At an adjourned session, held on the 17th of January 1800, the judges delivered their opinion, *seriatim*, but concurred in this general result.

By the Court.—The agreement of the parties constituted the referees the exclusive judges of the subject submitted to their decision. It gave them, however, no power to delegate their trust and authority to others ; nor to erect a new and arbitrary *tribunal, to determine future controversies. If the first set of referees could proceed in this way, the set empowered by them, might exercise a similar authority ; and so, *ad infinitum*, compel the parties, without their consent or control, to resort to a tribunal unknown to our laws. We are, therefore, unanimously of opinion, that the referees exceeded their authority ; and as their report or award was confirmed, generally, by the supreme court, the judgment of that court must also be generally reversed.

Judgment reversed.(*a*)

---

(*a*) This judgment being a bar to another personal action, the plaintiffs brought an assize of nuisance in the court of common pleas for Philadelphia county, to December term 1807; which, after an unsuccessful effort to remove the same by *habeas corpus* (1 Binn. 251), was finally removed to the supreme court, by *certiorari*, the court holding that they had jurisdiction, as judges of assize, and power to resummon the jury who had viewed the alleged nuisance (2 Binn. 192). The case came on for trial, at *nisi prius*, before BRACKENRIDGE, J., on the 26th of May, 1811, and after argument to the jury by *Lewis*, for the plaintiffs, and *Rawle*, for the defendants (who contended that the action would not lie against a devisee of the party by whom the nuisance was

Livezey v. Gorgas.

erected; and that the assize could only inquire into the plaintiff's actual damages),
the court delivered the following charge to the jury :

BRACKENRIDGE, Justice.—The proprietor of the soil through which a stream runs,
cannot divert it from its natural bed, save within his own bounds; and if even within
his own bounds, he diverts it, he must be answerable that it is brought back to its bed,
before it passes the boundary below; nor could he divert it, within his own bounds, so
as to waste it, and lessen the quantity that would have come to him below. He must
use his stream, so as not to diminish it to him to whom it is next to come. He cannot
change its natural channel. The proprietor below has a right to the stream as it came
to him by the usual supply of nature, so far as that no act of him above shall other-
wise, than by a reasonable use, diminish it. The proprietor above cannot say, the
stream is lessened, it is true, by the course I have given it, but it does you no damage;
you have enough still.[1] That answer will not suffice; it goes only to the *quantum* of
the injury, and the aggravation of it. It is sufficient, if the quantity of the water is
reduced, unreasonably, that would otherwise have descended to him that is below.
What is against his consent, is a wrong. He must be the judge of what he wants; and
whether the lessening is a help or a hurt. This is not ideal. The owner of the soil
above may have it in his power maliciously to waste the water, by turning it where
it would sink in part and disappear, or he might, to serve another, turn the stream
through his ground, and give it a new channel. I take it, that an action on the case
would lie for such a deprivation.

Be that as it may, the law is clear that the owner of the soil above has a right to
the stream in its natural state; unincreased in depth by him below. That is, he has a
right to the fall and current of the stream through his land, with the same descent at
the boundary below, that it had in its natural state. The proprietor below cannot in-
crease the depth of the stream above, by any impediment, so as to be justifiable. But
he cannot increase the depth above, otherwise than by flooding some of the soil, mak-
ing that a part of the channel which was not before.

In the application of this principle, it is true, as in the application of the principles
of law in all cases, the maxim *de minimis* occurs; the law will not regard small
things. But what is the meaning of this maxim ? It is, that the law will not force us
to put on glasses to see the *minimum*. But if seen, it must be noticed. I will not say,
that the throwing back the water a single line would force itself upon you, and com-
pel redress. For it must be an excess that is visible to the naked eye; that is discern-
ible to every vision that will call for the interposition of the law. This reduces it to
the practicable in the affairs of men.

But admitting that there is even a line of flooding on the land of another, or swell
of the water, by reason of an impediment of the current, and that it is ascertained to
be so, how can I say, that it is not a trespass, and the subject of legal notice. Say, an
increase that but begins to be such, yet if it is such, how can I get over it ? Give an
inch, take an ell—where shall we stop ? Apply these principles to the case before us,
and it will be seen whether a trespass exists. According to the testimony of some of
the witnesses, it would seem to be a trespass, not of lines, nor of inches: but of feet.
The backwater not only goes to the mill, the distance of many perches, but it rises on
the wheel three and one-half inches, so that the wheel wades, as the phrase is, and is
impeded in a revolution. If one inch at the mill, what must be the overflow at the
division line ? The how much, goes to the *quantum* of damages, the overflowing at
all, goes to the trespass.

It has been alleged, that the swell at the mill is in part owing to rocks below,
within the plaintiff's own ground. That may be in part, but it is not wholly so.

As to the agreement that has been given in evidence, it goes to show the understand-
ing of the parties at the time, both as to what might be an overflowing, and a compen-
sation for it. This will be considered. The question nevertheless is still open,
whether there actually was a raising of the dam in this case, to throw back the water

---

[1] See Miller *v.* Miller, 9 Penn. St. 74 ; Wheatley *v.* Chrisman, 24 Id. 298.

and flood the soil of the plaintiffs. Nothing that has happened, by agreement, or other-wise, can bar the investigation.

I lay the legal questions out of the case. I reserve the points; though it would not seem to me at present, that there is a great deal in them. A devisee may be considered, as for some purposes, a transferee, or alienee; but is so identified in his interest with that of the testator, that his situation may seem to be different from that of a pur-chaser, so as to be considered such an alienee that the writ would not lie against him, or that notice should be necessary. But in this case, there has been notice by action and otherwise: the *lis pendens*, the notoriety of the dispute; the defendant, in doing acts himself, adding to the nuisance and continuing it. But these matters will be con-sidered in bank. The jury need not charge their minds with a consideration of these at present. I will reserve them for the consideration of the judges in term; a mere matter of fact will at present be left to the jury; is there a trespass or nuisance, by the defendant, upon the land of the plaintiff, and how much the damages?

Verdict for the plaintiffs, damages $533.33.[1]

---

(*a*) CHEW, President, and SHIPPEN, Chief Justice, declined sitting in the cause, on account of their connection with the parties. YEATES (who was also connected with the plaintiff in error), HENRY and RIDDLE, Justices, were absent. The session of the court was adjourned, for want of a *quorum*, from July 1801, to the 12th of January 1802.

(*b*) Independently of bankrupt laws, voluntary assignments may contain a prefer ence to some creditors, and stipulate for a release to the debtor. Mather *v.* Pratt, *post*, p. 224; Lippincott *v.* Barker, 2 Binn. 174; McAllister *v.* Marshall, 6 Id. 338; Passmore *v.* Eldridge, 12 S. & R. 201; Hower *v.* Geesaman, 17 Id. 251; Harman's Lessee *v.* Reese, 1 Bro. 11; Pearpoint *v.* Graham, 4 W. C. C. 232; Marbury *v.* Brooks, 7 Wheat. 556.

[1] The record, pleadings and evidence in this case will be found in Brackenridge's Law Mis-cellanies, 438–57.

